IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CRAIG A. GRIDDINE,                    )
                                      )
                Plaintiff,            )
                                      )    CIVIL ACTION
v.                                    )
                                      )    No. 07-2488-JAR-DWB
                                      )
MICHAEL J. ASTRUE,                    )
Commissioner of Social Security,      )
                                      )
                Defendant.            )
_____ )


REPORT AND RECOMMENDATION

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits (DIB) and supplemental security income (SSI) under sections 216(i), 223, 1602 and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A)(hereinafter the Act).  Finding no error, the court recommends the Commissioner's decision be AFFIRMED pursuant to the fourth sentence of 42 U.S.C. § 405(g).

I.    Background

Plaintiff filed applications for DIB and SSI on Aug. 31, 2004, alleging disability beginning Feb. 10, 2004.  (R. 11, 12,

50-52, 319-23).[1]  Plaintiff's claims were denied initially and on

reconsideration, and plaintiff requested a hearing before an

Administrative Law Judge (ALJ).  (R. 11, 34-35, 36).  On Jan. 29,

2007,[2] a hearing at which plaintiff was represented by an

_____

[1]The Commissioner's "Exhibit List" is grossly deficient in
identifying the exhibits in Sections 1A, 1B, 1D, 1E, 1F, and SSI,
of the 370-page administrative record filed in this case.  (R.
1B-2).  The Commissioner's "Exhibit List" states that each
section of the administrative record "consist [sic] of 1 exhibits
[sic]," although those sections consist of many separate
exhibits.  Compare (R. 1B), with (R. 34-326).  For example:
Section 1A consists of two "Disability Determination and
Transmittal" forms, one each for the initial and reconsideration
denial of plaintiff's claims.  (R. 34, 35).  Section 1B contains
no less than five documents.  (R. 36-49).  Section 1D contains
two documents.  (R. 50-54).  Section 1E contains no less than
thirteen documents.  (R. 55-122).  Section 1F contains no less
than thirteen documents.  (R. 123-326).  Neither the "Exhibit
List" nor the "Court Transcript Index" refers to any section
containing SSI documents, but the record contains an "Application
for Supplemental Security Income," and a "Receipt for Your Claim
for Supplemental Security Income" which were included as two
additional documents within the "1 exhibits" of Section 1F of the
administrative record.  Compare (R. 1A-2) with (R. 319-26).
    Contrary to the Commissioner's practice in this case, D.
Kan. Rule 7.6(a)(4) requires that an index of the "separately
labeled" exhibits attached to briefs or memoranda be provided to
the court.  The Commissioner may not avoid the stricture of the
local rule merely by failing to separately identify the
individual exhibits, and instead "separately labeling" as a
single exhibit, an entire section of exhibits.  The Commissioner
would be well advised in the future to properly and separately
label each exhibit he files with the administrative record.
    This error is rendered more egregious because, in the
decision at issue the ALJ did not provide a single pinpoint
citation to any portion of the administrative record.
Nonetheless, in this opinion the court has searched out the
applicable documents and provided pinpoint citations to the
record.

[2]The decision states the hearing was held on Jan. 27, 2007.
(R. 11).  Plaintiff's brief asserts the hearing was held Nov. 1,
2005.  (Pl. Br. 2)(citing (R. 20-28)).  The hearing transcript

attorney was held before ALJ William G. Horne.  (R. 20, 26, 329-
70).  Testimony was taken from a vocational expert, from
plaintiff, and from his wife.  (R. 11, 330).  On Mar. 27, 2007,
ALJ Horne issued a decision finding that plaintiff is not
disabled, and denying plaintiff's applications.  (R. 11-19).

The ALJ found that plaintiff has a severe combination of
impairments consisting of:  diabetes with diabetic neuropathy,
bilateral carpal tunnel syndrome, adjustment disorder with
depression, sleep apnea, back pain, and obesity.  (R. 15, 18).
However, he found that the combination of impairments does not
meet or equal the severity of any impairment listed in the
Listing of Impairments.  (R. 15-16, 18).  As relevant to
plaintiff's arguments before the court, the ALJ concluded that
plaintiff's "allegation of an inability to work for 40 hours a
week on a sustained basis is not credible" (R. 16), and accepted
the testimony of the vocational expert in finding that there are
a substantial number of jobs in the economy of which plaintiff is
capable.  (R. 17).  Consequently, he determined that plaintiff is
not disabled within the meaning of the Act, and denied the
applications.  (R. 18-19).

---

states that the hearing was held Jan. 29, 2007.  (R. 329, 331).
The only "Notice of Hearing" contained in the record states that
the hearing was scheduled for Jan. 29, 2007.  (R. 20, 26).
Because the hearing transcript and the "Notice of Hearing" agree,
the court finds the ALJ hearing occurred on Jan. 29, 2007.

Plaintiff disagreed with the ALJ's decision and sought review by the Appeals Council. (R. 7, 327-28). The Appeals Council found that plaintiff's arguments did not provide a basis for changing the ALJ's decision, and denied the request for review. (R. 3-5). Therefore, the ALJ's decision is the final decision of the Commissioner. Id.; Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006). Plaintiff now seeks judicial review.

## II. Legal Standard

The court's review is guided by the Act. 42 U.S.C. §§ 405(g), 1383(c)(3). Section 405(g) provides, "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion. Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004); Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). The court may "neither reweigh the evidence nor substitute [it's] judgment for that of the agency." White, 287 F.3d at 905 (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); Hackett v. Barnhart, 395 F.3d 1168, 1172

-4-

(10th Cir. 2005).  The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that he has a physical or mental impairment which prevents him from engaging in substantial gainful activity and which is expected to result in death or to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d).  The claimant's impairments must be of such severity that he is not only unable to perform his past relevant work, but cannot, considering his age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  Id.

The Commissioner uses a five-step sequential process to evaluate whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920 (2007); Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004); Ray, 865 F.2d at 224.  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity

since the alleged onset, whether he has severe impairments, and
whether the severity of his impairments meets or equals the
severity of any impairment in the Listing of Impairments (20
C.F.R., Pt. 404, Subpt. P, App. 1). Id. at 750-51. If
plaintiff's impairments do no meet or equal the severity of a
listing, the Commissioner assesses claimant's residual functional
capacity (RFC). 20 C.F.R. §§ 404.1520, 416.920. This assessment
is used at both step four and step five of the sequential
evaluation process. Id.

After assessing claimant's RFC, the Commissioner evaluates
steps four and five--whether the claimant can perform his past
relevant work, and whether he is able to perform other work in
the economy. Williams, 844 F.2d at 751. In steps one through
four the burden is on claimant to prove a disability that
prevents performance of past relevant work. Dikeman v. Halter,
245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751
n.2. At step five, the burden shifts to the Commissioner to show
other jobs in the national economy that are within plaintiff's
capacity. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir.
1999).

Plaintiff claims the ALJ's credibility finding is not
supported by substantial evidence (Pl. Br. 14-16), and the ALJ
based his step five finding upon the vocational expert's (VE)
response to a hypothetical question that did not properly reflect

-6-

plaintiff's RFC.  (R. 17).  The Commissioner asserts there was no error in the ALJ's decision because the credibility finding was based upon substantial evidence (Comm'r Br. 8-11), and the hypothetical question was based upon all the credible restrictions supported by substantial evidence in the record as a whole.  (R. 12).  The court begins with consideration of the ALJ's credibility determination.

## III. Credibility Determination

Here, the ALJ summarized the record evidence.  (R. 12-15). In considering the issue of credibility, he stated that he had "evaluated the claimant's complaints of pain and other symptoms in accordance with 20 CFR 404.1529 and 416.929, SSR [(Social Security Ruling)] 96-4p, and SSR 96-7p."  (R. 16).  He acknowledged that he "must consider the entire case record, including the objective medical evidence, the claimant's own statements about symptoms, statements and other information provided by treating or examining physicians and other persons about the symptoms and how they affect the claimant."  Id.(citing SSR 96-7p).  He further acknowledged that "A claimant's statements about the intensity and persistence of pain or other symptoms, or about the effect the symptoms has [sic] on his ability to work, may not be disregarded solely because they are not substantiated by the objective medical evidence."  Id.

The ALJ listed the seven regulatory factors for evaluating the credibility of a claimant's allegations regarding symptoms which limit his ability to perform work.  Id.(citing 20 C.F.R. §§ 404.1529(c), 416.929(c)).  He then stated his conclusion and five specific reasons which factored into that conclusion:

> After carefully considering all the evidence of record in light of the credibility factors set forth above, the undersigned finds that the claimant's allegation of an inability to work for 40 hours a week on a sustained basis is not credible.  [1] The claimant has a fair work history, which indicates the motivation to work and reflects positively on his overall credibility, but it is only one factor of many to consider in this credibility analysis.  [2] The testimony from the claimant and his wife concerning the degree of his physical and mental limitations is not consistent with the medical records in evidence.  [3] The claimant testified that his lack of ongoing medical care is due to his loss of medical insurance, but that testimony is inconsistent with the fact that he knew how to obtain subsidized medical care from Swope Health.  [4] He testified that he has to lie down 2-3 times a day for a total of 1 1/2 hours due to fatigue, but there is no indication in the medical records to substantiate a medical need to do so.  [5] The record shows that he is able to perform his daily activities of living, which includes taking care of his five daughters, as his wife works nights.

(R. 16-17)(numbering added).

An ALJ's credibility determinations are generally treated as binding on review.  Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990).  "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence.  Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005).  Therefore, in reviewing the ALJ's

credibility determinations, the court will usually defer to the ALJ on matters involving witness credibility.  <u>Glass v. Shalala</u>, 43 F.3d 1392, 1395 (10th Cir. 1994).

As plaintiff points out, the Tenth Circuit has explained the analysis for considering subjective testimony regarding symptoms. <u>Thompson v. Sullivan</u>, 987 F.2d 1482, 1488 (10th Cir. 1993) (dealing specifically with pain).

> A claimant's subjective allegation of pain is not sufficient in itself to establish disability.  <u>Gatson v. Bowen</u>, 838 F.2d 442, 447 (10th Cir. 1988).  Before the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment, <u>Luna v. Bowen</u>, 834 F.2d 161, 163 (10th Cir. 1987) (citing <u>Frey [v. Bowen]</u>, 816 F.2d [508,] 515 [(10th Cir. 1987)]; <u>Nieto v. Heckler</u>, 750 F.2d 59 (10th Cir. 1984)), that could reasonably be expected to produce the alleged disabling pain.  <u>Luna</u>, 834 F.2d at 163; 42 U.S.C. § 423(d)(5)(A).  This court has stated: The framework for the proper analysis of Claimant's evidence of pain is set out in <u>Luna v. Bowen</u>, 834 F.2d 161 (10th Cir. 1987).  We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.  <u>Musgrave v. Sullivan</u>, 966 F.2d 1371, 1375-76 (10th Cir. 1992) (citing <u>Luna</u>, 834 F.2d at 163-64).

<u>Thompson</u>, 987 F.2d at 1488.

In evaluating symptoms, the court has recognized and the Commissioner has promulgated a non-exhaustive list of factors to be considered in the credibility determination.  <u>Luna</u>, 834 F.2d

at 165-66; see also 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

These factors include:

> the levels of medication and their effectiveness, the
> extensiveness of the attempts (medical or nonmedical)
> to obtain relief, the frequency of medical contacts,
> the nature of daily activities, subjective measures of
> credibility that are peculiarly within the judgment of
> the ALJ, the motivation of and relationship between the
> claimant and other witnesses, and the consistency or
> compatibility of nonmedical testimony with objective
> medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting

Thompson, 987 F.2d at 1489.  The regulatory factors overlap and

expand upon the factors stated by the court:  Daily activities;

location, duration, frequency, and intensity of symptoms; factors

precipitating and aggravating symptoms; type, dosage,

effectiveness, and side effects of medications taken to relieve

symptoms; treatment for symptoms; measures plaintiff has taken to

relieve symptoms; and other factors concerning limitations or

restrictions resulting from symptoms.  20 C.F.R.

§§ 404.1529(c)(3)(i-vii), 416.929(c)(3)(i-vii).

Much of plaintiff's argument regarding credibility is merely

a disagreement with the ALJ's evaluation of the evidence and

implies that the court should weigh the evidence differently than

the ALJ did.  The court may not do so.  "The possibility of

drawing two inconsistent conclusions from the evidence does not

prevent an administrative agency's findings from being supported

by substantial evidence."  Lax v. Astrue, 489 F.3d 1080, 1084

(10th Cir. 2007)(quoting <u>Zoltanski</u>, 372 F.3d at 1200).  The court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." <u>Id.</u>(quotation and brackets omitted)(quoting <u>Zoltanski</u>, 372 F.3d at 1200).  "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" <u>Hackett</u>, 395 F.3d at 1173(quoting <u>Huston v. Bowen</u>, 838 F.2d 1125, 1133 (10th Cir. 1988)).

Plaintiff first argues with regard to the ALJ's reason (3)(lack of ongoing medical care) that the ALJ is "essentially penalizing Griddine for not having insurance."  (Pl. Br. 15). This is not an accurate characterization of the decision or the record.

Plaintiff testified that he lost his insurance when he lost his job but that he had been seeing "Slope[3] Health Quindaro" since then.  (R. 337).  He testified that he doesn't have the insurance to go to a mental health provider, but he also testified that even during the time he was covered by medical insurance he did not see a mental health provider and was diagnosed with depression and given medication by his family

---

[3]The record reveals that plaintiff was treated at <u>Swope</u> Health Clinic between Aug. 2004, and July 2006.  (R. 123-59, 162-73, 216-25).

doctor.  (R. 340, 356).  At the time of the hearing plaintiff continued to take depression medication.  (R. 356).  Plaintiff testified that the doctors wanted to do further testing but they could not because he has no insurance.  (R.  341-42, 346-47).

As the ALJ noted, plaintiff's statement that he would get more medical care if he had insurance is inconsistent with the fact that he has received nearly continuous medical care from Swope Health after he lost his insurance coverage.  Although plaintiff testified that the doctors wanted to do further testing, he points to no evidence to that effect in the treatment records.  In fact, the treatment records reveal plaintiff has had nearly continuous treatment even after losing his job in May 2004, and they contain no mention or hint that additional treatment or testing was recommended but was deferred or foregone because of lack of insurance.  (R. 123-59, 162-73, 216-57).  The court finds no error in the ALJ's conclusion concerning reason three.

As reason four in support of his credibility finding, the ALJ stated that there is no indication in the medical records to substantiate plaintiff's allegation of a medical need to lie down one and one-half hours daily due to fatigue.  Plaintiff claims that his testimony and his complaints to medical care givers of fatigue and of a need to lie down are sufficient indication to support his allegation.

As plaintiff argues, he reported to medical personnel that he is fatigued. (R. 208, 211, 221).[4]  The ALJ noted that plaintiff had reported fatigue to Dr. Bean.  (R. 13).  However, as the ALJ found, there is no medical opinion or indication in any medical records that plaintiff needs to lie down one and one-half hours during each workday, or even that he must lie down for a short period during the workday.  Plaintiff's reports of fatigue to medical personnel is consistent with his hearing testimony to that effect, but the medical records are inconsistent with plaintiff's testimony that his fatigue requires him to lie down one and one-half hours each workday.  The ALJ is permitted to rely on this inconsistency in evaluating the credibility of plaintiff's allegations.  The court finds no error in reason four.

In his final credibility argument, plaintiff claims the ALJ misconstrued plaintiff's testimony when the ALJ found that the record shows plaintiff is able to perform his activities of daily living, including taking care of his five daughters. (Pl. Br. 16).  The Commissioner argues that it is permissible for the ALJ

---

[4]Plaintiff's brief cites to (R. 217-18) in asserting that he reported fatigue and that fatigue and depression were noted as diagnoses in an office visit on Nov. 4, 2004. (Pl. Br. 16).  The records cited relate to an office visit on Sept. 16, 2004, and contain no mention of fatigue. (R. 217-18).  Nonetheless, as cited above, the record reveals that plaintiff made an office visit on Nov. 4, 2004, in which he complained of fatigue and was assessed with fatigue and depression. (R. 221-22(duplicate records at 168-69)).

to consider daily activities in making his credibility determination, and that record evidence supports the ALJ's finding that plaintiff does more daily activities than plaintiff alleges. (Comm'r Br. 10-11).

As plaintiff argues, he testified merely that he gets his children up each morning and ensures that they get ready for school, he prepares a bowl of cereal for his seven-year-old daughter, and his children are able to bathe and dress themselves. (Pl. Br. 16)(citing (R. 349)). Were this all that the ALJ relied upon in finding that plaintiff "is able to perform his daily activities of living," it would be error because plaintiff's testimony was equivocal. (R. 17).

However, the ALJ specifically based his finding upon what "the record shows." Id. Plaintiff acknowledged that he reported to Dr. Padley in Jan. 2005 that he continued to do all of his daily living activities but at a slower pace. (Pl. Br. 16)(citing (R. 182)).[5] The ALJ included this information in his decision, and also noted plaintiff's report to Dr. Padley that he could no longer do any heavy lifting or yard work. (R. 14). Moreover, the record shows (and the ALJ noted) that plaintiff told Dr. Bean that during the day he helped with the children,

---

[5]Although plaintiff cited page 182 of the administrative record, the portion of Dr. Padley's report containing the information cited is actually at page 183 of the record. (R. 182-83).

-14-

did light chores around the house, was able to drive and to run short errands, and helped with light housekeeping and meal preparation.  (R. 209); <u>see also</u> (R. 13-14)(summarizing report of Dr. Bean's Nov. 15, 2004 consultative psychological examination).

Thus, the record contains plaintiff's testimony and information reported by plaintiff to the Social Security Administration tending to show that plaintiff is unable to perform activities of daily living.  It also includes the medical reports of Dr. Bean and Dr. Padley in which plaintiff reported to the doctors that he helped with his daughters and was able to perform activities of daily living, albeit at a slower pace and with limitations in his full capacity.  In his credibility determination, the ALJ need not take plaintiff's testimony at face value.  In the circumstances, it is not error for the ALJ to rely in part upon the reports of Drs. Padley and Bean to find that plaintiff's allegations of symptoms and limitations are not credible.  Because the ALJ made a reasoned credibility determination, closely and affirmatively linked to substantial evidence in the administrative record, the court will defer to the ALJ's credibility determination.

**IV.  Residual Functional Capacity**

In his final allegation of error, plaintiff claims the ALJ erred because he did not include in his hypothetical questioning of the VE a requirement that plaintiff must lie down "for 30 to

-15-

60 minutes at a time at least once, occasionally twice during an eight-hour period," and therefore, the VE's testimony may not be relied upon.  (Pl. Br. 17).  As the Commissioner points out the RFC assessment and the hypothetical question presented to the VE need only include those limitations supported by substantial evidence in the record.  (Comm'r Br.)(citing <u>Talley</u>, 908 F.2d at 588).  The hypothetical presented to a vocational expert must include all limitations found by the ALJ, but need not include all limitations alleged by plaintiff.  <u>Barnett v. Apfel</u>, 231 F.3d 687, 690 (10th Cir. 2000).

As the court found above, the ALJ properly found that plaintiff's allegations of symptoms and limitations are not credible.  Consequently, neither the RFC nor the hypothetical question need include plaintiff's testimony regarding a need to lie down.  Therefore, the ALJ properly relied upon the testimony of the VE in response to the hypothetical question given.

**IT IS THEREFORE RECOMMENDED** that judgment be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Copies of this recommendation and report shall be delivered to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and D. Kan. Rule 72.1.4, the parties may serve and file written objections to this recommendation within ten days after being served with a copy.

Failure to timely file objections with the court will be deemed a waiver of appellate review.  <u>Morales-Fernandez v. INS</u>, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated this 13th day of February 2009, at Wichita, Kansas.


s/Donald W. Bostwick
**DONALD W. BOSTWICK**
**United States Magistrate Judge**